IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS P. WILLIAMS, SR., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-1090 |
| v. | : | |
| NATIONWIDE INSURANCE a/k/a Nationwide Mutual Insurance Company, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                   March 24, 2023

After a fire damaged a residential property, the homeowners submitted a claim under their homeowners insurance policy for the damage caused by the fire, which the insurer denied. This denial of coverage is not at issue in this case. The homeowners then sold the fire-damaged property to the plaintiff. The money from the sale was used to satisfy the entirety of the homeowners' outstanding mortgage with a bank.

Soon after the sale, the plaintiff requested that the insurer reimburse him for the amount he claims he paid toward satisfying the homeowners' mortgage. He based his request on a standard mortgage clause in the homeowners' insurance policy, which stated that a denial of the homeowners' claim would not preclude payment to a valid claim of the mortgagee. Although the bank was the original mortgagee, the plaintiff claims that he stepped into the shoes of the bank once he allegedly paid the balance of the mortgage. Thus, the plaintiff claims that he is entitled to the same payment the insurer would have had to pay to the bank, namely the amount it would cost to repair the property.

The insurer refused to pay the plaintiff's claim. Undeterred, the plaintiff then filed a complaint in a Pennsylvania state court in which he sought a declaration that the insurer was required to reimburse him for the repair costs under the policy's mortgage clause. The insurer removed that action to this court, and the parties have now filed cross-motions for summary judgment on the issue of whether the homeowners' insurance policy requires the insurer to reimburse the plaintiff for the costs to repair the property.

As the court explains below, any duty the insurer had to pay out under the standard mortgage clause in the homeowners insurance policy was discharged once the mortgage was satisfied. Accordingly, the court will grant the insurer's motion for summary judgment, deny the plaintiff's cross-motion for summary judgment, and enter judgment in favor of the insurer and against the plaintiff on the claim raised in his operative complaint.

## I.     PROCEDURAL HISTORY

The plaintiff, Thomas P. Williams, Sr. ("Williams"), commenced this action by filing a complaint seeking a declaratory judgment against the defendants, Mark R. Ruch and Elizabeth Ann Ruch (together "the Ruchs") and Nationwide Insurance, a/k/a Nationwide Mutual Insurance Company ("Nationwide") in the Court of Common Pleas of Lehigh County on March 4, 2022. *See* Not. of Removal, Ex. A, Compl., Doc. No. 1-4.[1] In the complaint, Williams alleged that he had purchased a fire-damaged property owned by the Ruchs and paid off the mortgage encumbering the property. *See* Compl. at ¶¶ 5, 6, 11. Williams asserted that Nationwide underwrote a homeowners insurance policy that obligated it to reimburse Williams the amount he paid, totaling $135,490.13. *See id.* at ¶¶ 7, 9, 11–13. The complaint asserts one claim for a declaratory judgment, pursuant to 42 Pa. C.S. § 7537, stating: "Defendant Nationwide is to pay to [Williams] the sum of

---

[1] The complaint is found in the notice of removal, *see* Doc. No. 1-4, Ex. A at ECF pp. 2–11. Hereinafter, the court will cite directly to the complaint instead of referencing its location as part of the notice of removal.

[the adjusted claim amount,] $103,000.00[,] plus interest at the legal rate from September 23, 2020 until the present in accordance with the applicable provisions of the insurance policy[.]" *Id.* at ¶ 33.

Nationwide removed the case to this court on March 22, 2022.[2] *See* Doc. No. 1. On March 29, 2022, Nationwide filed a motion to dismiss the complaint and a supporting memorandum. *See* Doc. Nos. 8, 9. On April 4, 2022, Williams filed two motions: (1) a motion to remand the case to Lehigh County, and (2) a motion to stay proceedings pending the resolution of the motion to remand. *See* Doc. Nos. 11, 12. After an agreement between counsel, the court entered an order which, *inter alia*, (1) denied the motion to dismiss, the motion to remand, and the motion to stay proceedings; (2) determined the Ruchs were fraudulently joined and dismissed them from the case; and (3) indicated that the parties' dispute would be resolved via cross-motions for summary judgment and set a deadline for the parties to file a stipulation of undisputed material facts. *See id.* Apr. 22, 2022 Order at 2 & n.2, Doc. No. 16.

On May 4, 2022, Nationwide filed an answer and affirmative defenses to the complaint. *See* Doc. No. 18. On May 7, 2022, Williams filed a motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* Doc. No. 19. Nationwide filed a response in opposition to the motion to amend the complaint on May 9, 2022. *See* Doc. No. 20. After a telephone conference with counsel, the court granted the motion to amend the complaint insofar as it pertained to amending the claims against Nationwide and denied the motion with respect to rejoining the Ruchs as defendants. *See* May 23, 2022 Order, Doc. No. 23. On June 3, 2022,

---

[2] In removing the case, Nationwide invoked the court's diversity jurisdiction under 28 U.S.C. § 1332(a), even though the Ruchs were citizens of the same state as Williams. *See* Not. of Removal at ¶¶ 10–13. Nationwide argued that Williams had fraudulently joined the Ruchs and, as such, the court should discount their citizenship for purposes of determining whether the parties were completely diverse in this case. *See id.* at ¶¶ 5–6.

Williams filed an amended complaint that complied with the court's order.[3] *See* Doc. No. 25. On June 7, 2022, Nationwide filed an answer and affirmative defenses to the amended complaint. *See* Doc. No. 27.

The parties filed a stipulation of facts for the court to consider for the purpose of resolving the forthcoming motions for summary judgment. *See* Doc. No. 26. Nationwide filed a motion for summary judgment on June 20, 2022. *See* Doc. No. 30. Williams filed a cross-motion for summary judgment on July 6, 2022. *See* Doc. No. 31. Nationwide and Williams each filed responses in opposition to the cross-motions for summary judgment. *See* Doc. Nos. 32, 33. The court then held oral argument on the cross-motions for summary judgment on December 13, 2022. The cross-motions for summary judgment are now ripe for review.

## II.   FACTUAL BACKGROUND

The Ruchs owned property located at 258 McKuen Way, Albrightsville, PA 18120 ("the Property"). Stipulation of Pl. and Def. Nationwide General Insurance Co. as to Facts for Ct.'s Consideration in Resolving Mots. for Summ. J. ("SOF") at ¶ 1, Doc. No. 26. They had insured the Property for property damage under a policy with Nationwide ("the Policy") and had a mortgage on the Property with PNC Bank NA ("PNC").[4] *See id.* at ¶¶ 3, 9–10.

On June 18, 2020, a fire caused damage to the Property. *See id.* at ¶ 2. The Ruchs submitted a claim to Nationwide under the Policy, and Nationwide eventually determined that the amount of the adjusted claim was $103,000.00. *See id.* at ¶¶ 14–15. However, Nationwide later denied the claim because, it determined that, *inter alia*, (1) Mr. Ruch failed to comply with the Policy's post-

---

[3] The amended complaint was very similar to the original complaint. *Compare* Compl. at ¶¶ 1–34, *with* Am. Compl. at ¶¶ 1–33, Doc. No. 25. The amended complaint also contained a single cause of action for a declaratory judgment. *See* Am. Compl. at ¶¶ 24–33.
[4] The Policy named the Ruchs as the named insureds and was identified as policy number 58 37 HR 028948. *See* SOF, Ex. A, Nationwide Homeowner Policy ("NHP") at ECF p. 9.

loss duties by: (a) failing to appear for scheduled examinations; (b) not producing requested documents; and (c) making material misrepresentations to Nationwide; and (2) Nationwide's investigation of the fire revealed that it was "intentionally set" *See* Nationwide Aug. 31, 2021 Ltr. at ECF pp. 9–10, 12, Doc. No. 30. *See id.*

The Policy contained a mortgage clause which stated:

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **C.** Duties After Loss, **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** — Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

*See* NHP at ECF pp. 38–39. The Policy listed PNC as the mortgagee, and the Ruchs were the mortgagors on the PNC mortgage. *See* SOF at ¶¶ 9–10.

On June 21, 2020, Williams purchased an assignment of the proceeds of the Policy from the Ruchs.[5] *See id.* at ¶ 19. In September 2020, he purchased the Property from the Ruchs for $155,000.[6] *See id.* at ¶ 5. At the time of the sale, the Ruchs owed $135,490.13 on the mortgage to PNC and used the funds from the sale to satisfy the outstanding balance.[7] *See id.* at ¶ 17. At that time, Nationwide had not made any payment to PNC pursuant to the mortgage clause. *See id.* at ¶ 15. After receiving the payment, PNC filed a Satisfaction of Mortgage with the Carbon County Recorder of Deeds.[8] *See* Satisf. of Mortg. at ECF pp. 68–71.

Williams sought payment from Nationwide under the Policy for the adjusted claim amount of $103,000, arguing that Nationwide had a duty to pay PNC after the loss and because the funds used to satisfy the mortgage came from his purchase of the Property, he stepped into the shoes of PNC. *See* Am. Compl. at ECF at ¶¶ 11–13. Nationwide refused to pay. *See* SOF at ¶ 15.

### III.   DISCUSSION

#### A.   Standard of Review – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[5] On March 1, 2022, Williams renounced and canceled the assignment and informed the Ruchs and Nationwide. *See* SOF at ¶ 20.

[6] In paragraph 5 of the stipulation of facts, the parties state that Williams paid the Ruchs $155,000 for the Property but in paragraph 17, the parties stipulate that Williams paid $150,000. Based on other information in the record, the court believes that $155,000 was the sales price of the Property. *See* SOF, Ex. B, Satisfaction of Mortgage ("Satisf. of Mortg.") at ECF p. 64 (listing sale price of Property as $155,000.00 credit for sellers and $155,000.00 debit from buyer). Williams then sold the Property in November 2020. *See id.* at ¶ 21.

[7] The Ruchs ultimately received $13,312.97 from the sale after paying off the mortgage and other costs. *See id.* at ¶ 18.

[8] On the satisfaction of mortgage document, Elizabeth Ruch was listed as the mortgagor and PNC Mortgage was listed as the mortgagee. There was never an assignment of mortgage between PNC and Williams. SOF at ¶ 13.

as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

### B. Analysis

Williams states that the funds used to satisfy the mortgage were direct proceeds from his payment for the Property. *See* Pl.'s Br. in Supp. of his Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56(a) ("Pl.'s Br.") at 7, Doc. No. 31-1. He argues that because these funds paid off the mortgage on the Property and that because Nationwide would have had to pay PNC, he stepped into the shoes of PNC and is entitled to receive payment from Nationwide under the Policy's mortgage clause. *See id.* at 7–8. Nationwide disagrees, arguing that it has no obligation to pay under the mortgage clause because the mortgage was satisfied. *See* Mem. of Law in Supp. of Def. Nationwide General Insurance Co.'s Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56(a) ("Def.'s Mem.") at ECF p. 5, Doc. No. 30-1. Further, Nationwide contends that Williams misconstrues his property interest because he stepped into the shoes of the mortgagor (the Ruchs), not the mortgagee (PNC). *See id.*; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56(a) ("Def.'s Resp.") at ECF p. 3, Doc. No. 32-1 ("[W]hen he bought the property [Williams'] interest in the property became that of owner, not mortgagee. He had no rights under Nationwide's Policy"). Nationwide is correct on both points.

### 1. Homeowner versus Mortgagee

The court will start with reviewing Williams' interest in the Property. Williams states that he provided the funds used to satisfy the mortgage. *See* Pl.'s Br. at 8. He argues providing the

7

funds puts him in the same position as PNC and is therefore entitled to payment as the mortgagee. *See id.* Nationwide disagrees, stating that Williams stepped into the shoes of the homeowner (the Ruchs), not PNC, and is entitled to the same rights as the Ruchs. *See* Def.'s Resp. at ECF p. 3. Williams paid the Ruchs for the Property, and then the Ruchs paid off the mortgage from these proceeds. And while it is true that the sale proceeds were used to pay the mortgage, this does not give the buyer (Williams) any legal standing with respect to the mortgage. Thus, Williams is not entitled to payment pursuant to the Policy's mortgage clause as the "substitute" mortgagee.

There is no evidence demonstrating Williams assumed any legal rights under the mortgage. Williams did not make a direct payment to PNC, nor did PNC assign the mortgage to Williams. *See* SOF at ¶¶ 13, 17. Rather, Williams purchased the Property from the Ruchs for $155,000, and a large portion of the money from the purchase was used to satisfy the mortgage. *See id.* at ¶¶ 5, 17; *see also* SOF, Ex. B, Settlement Statement at ECF p. 19 (listing $135,490.13 debit to satisfy mortgage from Ruchs). Further, the settlement statement does not identify Williams as the lender but rather lists "CASH" in the designated space to fill in the name of the lender. *See* Settlement Statement at ECF p. 18. In addition, the Policy specifically identified PNC as the mortgagee. *See* SOF at ¶¶ 9, 13. Overall, the court fails to find a factual basis to conclude that Williams stepped into the shoes of the mortgagee after purchasing the Property.[9] And while Williams novel argument demonstrates a logical creativity, he cites no case law, and the court finds none, to support his contention that a purchaser of a property steps into the shoes of the mortgagee when the funds from the purchase are used to satisfy an outstanding mortgage.[10] *See Laurel Nat'l. Bank v. Mutual*

---

[9] There is evidence in the record which supports Williams as the homeowner. He bought the property from the Ruchs and purchased an assignment of proceeds from the Policy, which he later renounced and canceled. *See* SOF at ¶¶ 5, 19. Williams later sold the Property, exercising his right to dispose of his property. *See id.* at ¶ 21. Further, on the sale documents, Williams is listed as the buyer and there is a $155,000.00 debit under the buyer column, the amount he agreed to pay for the Property. *See* Settlement Statement at ECF pp. 18–19.

[10] Black's Law Dictionary defines a "mortgagee" as "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." *Mortgagee*, Black's Law Dictionary (11th ed. 2019). Further, it defines a "mortgagee in possession" as "[a]

*Benefit Ins. Co.*, 444 A.2d 130, 132 (Pa. Super. 1982) ("The foreclosure referred to in the contract must mean a foreclosure by the mortgagee since the purchase of the property by anyone else at the foreclosure proceedings would extinguish the mortgagee's insurable interests.").

Even if Williams stepped into the shoes of the mortgagee, which he did not, he still would not be entitled to payment under the mortgage clause of the Policy.

### 2. Duty to Pay Pursuant to the Mortgage Clause

Williams contends that, pursuant to the mortgage clause, "[o]nce the property is damaged, [Nationwide] is contractually obligated to pay the mortgagee even if [Nationwide] denies [the] insured's claim." Pl.'s Br. at 7. Further, he argues that because "[he] intervened and paid [Nationwide's] debt . . . now [Nationwide] must pay [him]." *Id.* Nationwide states that Williams has no cognizable claim because the Ruchs satisfied the mortgage at closing and there is no present obligation to pay. *See* Def.'s Mem. at ECF p. 5; Def.'s Resp. at ECF p. 1. Nationwide is correct because the law permits a mortgagee to recover the amount necessary to satisfy the mortgage but no more. Thus, the court finds that because the mortgage has already been satisfied, and there is no evidence of a new mortgage, the mortgagee is not entitled to any further payment under the Policy's standard mortgage clause.

To start, there are two types of mortgage clauses, standard and ordinary. *See Gallatin Fuels, Inc.* v. *Westchester Fire Ins. Co.*, 244 F. App'x. 424, 429–30 (3d Cir. 2007) (explaining difference between standard mortgage clause and ordinary mortgage clause). When an insurance policy with a mortgage clause grants the mortgagee greater rights than the mortgagor, the clause is "standard."

---

mortgagee who takes control of mortgaged land by agreement with the mortgagor, usu[ally] upon default of the loan secured by the mortgage." *Id.* The definitions of these terms appear to show a requirement that the lender first have a mortgage on the property and then take possession to qualify as a "mortgagee in possession." Williams concedes that there was no mortgage foreclosure. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56(a) at 2, Doc. No. 33-1 ("Here, ***while there was no mortgage foreclosure***, [Williams] paid the funds applied against the balance of the mortgage, just as occurs in a foreclosure situation." (emphasis added)).

9

*Id.*; *see Mortgagee Clause*, Black's Law Dictionary (11th ed. 2019) ("**[S]tandard mortgage clause.** . . . A mortgage clause that protects the mortgagee's interest even if the insured mortgagor does something to invalidate the policy."). Policies with standard mortgage clauses are not simply an agreement between the insurer and the insured. *See Taylor v. Seckinger*, 184 A.2d 317, 319 (Pa. Super. 1962) (explaining mechanics of standard mortgage clauses); *Peer v. Minnesota Mut. Fire & Cas. Co.*, Civ. A. No. 93-2338, 1995 WL 141899, at *14 (E.D. Pa. Mar. 27, 1995) (same). Rather,

> [w]here a policy is issued to the owner and a [standard] mortgagee clause is attached, the company is, in effect, making two contracts. First it is agreeing to indemnify the owner for the loss of the property, and second, it is insuring the creditor's security for his debt[.] If the circumstances are such that the company would be liable to the owner under the policy, a payment to the mortgagee would be in relief of the mortgage debt, but if, for any reason, the company would not be liable to the owner, its liability to the creditor would nevertheless continue. In the latter case, the liability to the creditor would be the same as though the company had insured the creditor's interest alone and, if it pays the creditor, it would be entitled to be subrogated to his rights[.]

*Snyder v. Munroe*, 27 Pa. D. & C.2d 32, 36 (Adams Cnty. Ct. Com. Pl. 1962); *see also Gallatin Fuels*, 244 F. App'x. at 429–30 (recognizing that insurance policies with standard mortgage clauses essentially create two distinct contracts). Standard mortgage clauses protect a mortgagee's interest even when the insurer denies the insured's claim. To determine if a mortgage clause is standard, courts compare the rights of the mortgagee and insured under the policy. *See Gallatin Fuels*, 244 F. App'x. at 430 (comparing rights of mortgagee with insured).

In the instant case, under the Policy, the mortgagee could recover even if Nationwide denied a homeowner's claim. *See* SOF at ¶ 8 ("If we deny your claim, that denial will not apply to a valid claim of the mortgagee." (quoting NHP at ECF p. 39)). Further, the Policy required Nationwide to provide the mortgagee with at least ten days' notice before the date of cancelation.

10

*See* NHP at ECF p. 39. These provisions gave the mortgagee greater rights than the insured.[11] *See Gallatin Fuels*, 244 F. App'x. at 430 (determining that mortgagee had greater rights than insured under insurance policy because of independent notice provision and mortgagee's ability to recover despite denial of insureds claim). Because the mortgage clause gave the mortgagee greater rights than the insured, the mortgage clause in the Policy is standard. *See id.*

With a standard mortgage clause, the Policy essentially created two contracts for Nationwide. *See* NHP at ECF pp. 7–62. The first contract was between Nationwide and the Ruchs, insuring losses to the Property. The second was between Nationwide and the mortgagee, PNC, protecting PNC's interest as the lender. Williams claims that, under this "second contract," Nationwide is obligated to pay the mortgagee once the Property was damaged.[12] *See* Pl.'s Br. at 7. He argues that he "intervened and paid [Nationwide]'s debt and now [Nationwide] must pay [him]." *Id.* Williams points to two cases in support of his claim under the Policy.

First, he argues that *Laurel National Bank v. Mutual Benefit Ins. Co.*, 444 A.2d 130 (Pa. Super. 1982) supports his claim for payment of proceeds from the Policy. *See id.* at 8. In *Laurel National Bank*, the homeowners had an insurance policy with a standard mortgage clause and two mortgages on their property, both with the same mortgagee. *See* 444 A.2d at 131. The homeowners defaulted on their mortgages, and the mortgagee then initiated foreclosure proceedings. *See id.*

---

[11] In *Business Development Corp. of Georgia, Inc. v. Hartford Fire Ins. Co.*, 747 F.2d 628, 630 (11th Cir. 1984), the Eleventh Circuit Court of Appeals determined that the mortgage clause gave greater rights to the mortgagee when the insurance policy extended the mortgagee an independent right to ten days' notice upon cancelation. Similarly, in *Gallatin Fuels*, the Third Circuit Court of Appeals found that a mortgage clause gave the mortgagee greater rights than the insured when the policy provided a requirement that the insurer provide the mortgagee with written notice of cancelation at least ten days before the effective date and provided that the mortgagee could still have the right to receive payment even if the insurer denied the insured's claim. *See* 244 F. App'x. at 430. The mortgage clause here has a similar notice requirement and provides the mortgagee with a right to receive payment even if the insured did not. *See* NHP at ECF pp. 38–39.

[12] As discussed above, Williams argues that he is the mortgagee. For the reasons stated above, the court disagrees.

The mortgagee purchased the property at a sheriff's sale. *See id.* Following the sale, a fire destroyed the house on the property. *See id.*

The Superior Court addressed whether the mortgagors, who held the homeowners insurance policy, or the mortgagee, were entitled to the proceeds from that policy when the loss occurred after the mortgagee had foreclosed on and took possession of the property. The Superior Court held that:

> A general rule may be formulated to establish that under a policy containing a standard mortgage clause, the mortgagee's interest is protected as it may appear before or after foreclosure or other methods of change of ownership or title for the insurance follows the property. The exception to this general rule is that **if the mortgage indebtedness is fully satisfied after loss by foreclosure or other means, the mortgagee may not recover any proceeds under the insurance policy.**

*Id.* at 134 (emphasis added). The Superior Court also explained that "allow[ing] recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to [the] mortgagee's unjust enrichment." *Id.* (quoting *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 279 So. 2d 460, 464 (Ala. 1973)). Here, the mortgage indebtedness was fully satisfied after the loss, as evidenced by PNC documenting the satisfaction of the mortgage with the Carbon County Recorder of Deeds.[13] *See* Satisf. of Mort. at ECF pp. 68–71. Because the mortgage indebtedness was fully satisfied, the mortgagee cannot recover any additional proceeds under the Policy. *See Laurel Nat'l Bank*, 444 A.2d at 134.

Second, Williams argues that *Lexington Ins. Co. v. 3039 B St. Assocs., Inc.*, 627 F. App'x 108 (3d Cir. 2015) supports his position. In *3039 B St.*, the property owner had a warehouse, which had a mortgage and insurance coverage. *See* 627 F. App'x at 109. The insurance policy included a standard mortgage clause. *Id.* The property suffered a loss, and the insurer began to pay out the

---

[13] The Property was located in Carbon County.

claim under the insurance policy. *See id.* But, before the insurer issued the remainder of the insurance proceeds, the property owner defaulted on the mortgage. *See id.* The mortgagee initiated foreclosure proceedings and purchased the property at the sheriff's sale.[14] *See id.* The mortgagee and the former property owners tried to recover the remaining payment under the insurance policy. *See id.* at 110. Ultimately, the Third Circuit held that the homeowners were "entitled to the proceeds in excess of a deficiency judgment because the foreclosure sale of the property took into account the condition of the property after the loss." *Id.* at 111.

The Third Circuit agreed with *Laurel National Bank*'s prediction but found the holding inapplicable to the facts in *3039 B. St.* The court agreed that the timing of foreclosure is relevant in determining the mortgagee's interest under the insurance policy and that when the loss precedes the foreclosure, the mortgagee is only entitled to recover up to the amount of the outstanding mortgage. *See id.* Permitting the mortgagee to recover after full satisfaction of the mortgage would amount to unjust enrichment. *See id.* (quoting *Laurel Nat'l Bank*, 444 A.2d at 134).

In the instant case, the fire damaged the Property before any foreclosure (or other method of transferring property) occurred. After the loss, Williams obtained his interest in the Property. Even if he is the mortgagee, he obtained his interest after the loss and would only be able to recover up to full satisfaction of the mortgage. *See Laurel*, 444 A.2d at 134. But the insured mortgage was fully satisfied and neither party presented any evidence that once Williams obtained his interest, there was any outstanding mortgage on the Property. *See* SOF at ¶¶ 11–12. Therefore, any further recovery under the Policy would constitute an unjust enrichment for the mortgagee. *See Laurel Nat'l Bank*, 444 A.2d at 134 ("[I]f the mortgage indebtedness is fully satisfied after loss **by**

---

[14] The Third Circuit noted that "[t]he principal difference between the mortgagee in *Laurel* and [the mortgagee here] is that the mortgagee in *Laurel* assumed ownership of the property before the loss, and therefore its 'insurable interest was that of owner and not that of mortgagee.'" *Id.* at 111. In *3039 B St.*, the mortgagee's interest in the insurance policy was not that of the property owner. *See id.*

13

**foreclosure or other means**, the mortgagee may not recover any proceeds under the insurance policy.") (emphasis added); *3039 B St.*, 627 F. App'x at 111 (reviewing *Laurel Nat'l Bank*).[15] At bottom, the mortgagee cannot seek further payment under the Policy and Nationwide has no present obligation to pay.

## IV. CONCLUSION

For the reasons stated above, the court will grant Nationwide's motion for summary judgment and will deny Williams' cross-motion for summary judgment. As such, the court will enter judgment in favor of Nationwide and against Williams on the sole count in the amended complaint seeking a declaratory judgment.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[15] Even if he was entitled to payment, Williams would not be in any better financial position. If Nationwide had paid Williams as if he was the mortgagee, Nationwide would have been subrogated to the mortgagee's interest and entitled to payment from the homeowner—Williams. *See* NHP at ECF p. 39. Williams would then have owed mortgage payments or be required to satisfy the outstanding mortgage held by Nationwide.